THE STATE, EX REL. WALTER, DIR. OF PUBLIC SERVICE OF THE CITY OF AKRON, *v.* VOGEL, DIR. OF FINANCE OF THE CITY OF AKRON.*

(No. 4850—Decided November 5, 1958.)

*Mr. Harry N. Van Berg,* for plaintiff.
*Mr. Rufus L. Thompson,* for defendant.

*Judgment affirmed, 169 Ohio St., 368.

DOYLE, J. We have for decision the sufficiency of an amended petition in mandamus, now under attack by a demurrer which charges that "the amended petition does not state facts sufficient to show a cause of action."

The petition was filed by Leo G. Walter, as Director of Public Service of the city of Akron, and directed against Frank J. Vogel, as Director of Finance of the city of Akron.

In brief, the amended petition seeks an order directing the Director of Finance to pay for electricity used for lighting the intersections on an express highway, constructed within the boundaries of the city of Akron, out of a highway maintenance fund kept under the director's control and consisting of money received by the city of Akron from the state of Ohio as the city's share of proceeds from state motor vehicle fuel taxes and state motor vehicle license taxes.

It is asserted that the Director of Finance refuses to pay the bill out of the said fund "on the sole ground that such payment is not specifically authorized by the terms of Secs. 4501.04 (A), 5735.23, and 5735.25, Revised Code."

The amended petition continues by alleging "that the said Akron Expressway is constructed upon a right-of-way approximately 250 feet in width and is not accessible from abutting property; that the said expressway may not be used by pedestrians or bicycle riders and may be used only by the operators of motor vehicles; that the lighting of the said expressway is of benefit only to motorists using the said expressway; that the lighting equipment so installed in the said expressway is an appurtenance thereof, and that the furnishing of electricity for the lighting equipment so installed is a necessary part of the maintenance of the said highway"; and that "plaintiff believes and alleges that the expense of providing lighting for the benefit only of traffic on the said expressway should not be paid from general tax revenue, but should and may properly be paid from the said motor vehicle fuel and license tax funds under the provisions of Secs. 4501.04 (A), 5735.23, and 5735.25, R. C."

If the Code sections pleaded in the amended petition allow payment for electrical current out of the tax funds which were

turned back to the city, such petition states a cause of action; and if they do not authorize such payment, then the demurrer must be sustained.

Section 5, Article XII of the Constitution of Ohio, provides:

"No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied."

Section 5a of the same article of the Constitution is in the following words and phrases:

"No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on public highways, or to fuels used for propelling such vehicles, shall be expended for other than costs of administering such laws, statutory refunds and adjustments provided therein, payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways and bridges and other statutory highway purposes, expense of state enforcement of traffic laws, and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways."

There are a number of statutes which spell out the uses which may be made of funds derived from taxes of the kind here under consideration. We refer to Sections 4501.04 (A), 5735.05, 5735.23, 5735.25, and 5735.27, Revised Code.

The language employed by the Legislature comes well within the constitutional limitations, and states, in part, that the funds may be used to construct, reconstruct, repave, widen, *maintain,* repair, clear and clean public highways, roads and streets.

In the light of the statutes, our problem is confined to but one question—which is: Does the word "maintain" mean the furnishing of electrical energy for the lighting of fixtures located upon the highway?

The word "highway" is generally considered to mean something more than the road bed. It is said to include bridges, viaducts, grade separations, appurtenances, and approaches on or to such road or highway.

In Section 5501.01, Revised Code, the Legislature undertook to define its meaning of the word "road" or "highway" when it legislated on limited-access highways in Section 5511.02, Revised Code. Although we are not here primarily concerned with the latter-mentioned section of the Code, nevertheless, when the same word ("highway") is employed in different acts by the same legislative body, the word may be determined to mean the same thing in each of the acts. In our interpretation of the words "road" and "highway," as used in statutes regulating the use of funds derived from gasoline and license taxes, we conclude that the words mean, among other things, appurtenances to the traveled part of the highway, which appurtenances may consist of lighting fixtures. We decide, therefore, that the tax money can be used to "maintain" lighting fixtures erected upon the highway.

We now are confronted with the question of the Legislature's meaning of the word "maintain," when used in connection with lighting fixtures on the highway.

Lexicographers give the word "maintain" several meanings, as have the various courts of the land under varying circumstances. The word was derived from the Latin "*manu tenere*" and means literally "to hold in the hand." It is a word of common use but of somewhat indefinite and broad meaning; and when interpreting it one generally must look to the intention of the user thereof, as well as its place in context. It is variously defined as "to furnish means for the subsistence or existence of; to keep in an existing state or condition; to keep from change; to keep from falling, declining or ceasing; to keep in proper condition; to keep in repair; to keep up and preserve." Negatively, it is sometimes defined as "not to suffer, or fail or decline." In a broader sense, it may be said to mean "to keep in a state of efficiency for the furnishing and rendition of those services which are required for the use of existing facilities."

As the word "maintain" is placed in context in the statutes, it can hardly be said to mean that an accessory on a public highway is being maintained even though it is not usable. Indeed,

a lighting fixture is not usuable nor does it fulfill its purpose without electric current. Logic would seem to indicate that the Legislature did not mean, in its use of the word "maintain," that lighting fixtures on a limited-access highway should be maintained for ornament only, but that it did mean that the highway accessories should be kept in a state of efficiency and be kept and maintained in such a way as to efficiently serve the purpose of their existence, *i. e.*, as a safety measure to protect the vehicular users of the highway.

We conclude that the fund here in controversy may be used for the payment of electrical current used for lighting the highway intersections, and by reason thereof that the demurrer should ·be overruled.

In view of the agreement of counsel that, if this court should overrule the demurrer, the case should be decided on the merits without further pleadings, it is ordered that the Director of Finance of the city of Akron pay the obligation incurred by the city for the lighting of the highway accessory.

*Writ allowed.*

HUNSICKER, P. J., and STEVENS, J., concur.