Mr. Roland Loog Acting Director Alachua County Visitors and Convention Bureau 30 East University Avenue Gainesville, Florida 32601
Dear Mr. Loog:
You have asked for my opinion on substantially the following question:
What is meant by the phrase "open to the public" as it is used in section 125.0104(5)(a)1., Florida Statutes?
In sum:
The phrase "open to the public" as it is used in section125.0104(5)(a)1., Florida Statutes, refers to facilities that are available for use by the general public and may include facilities that are open only by appointment.
According to your letter, a local historic homestead/museum is requesting a grant of local tourist development money received by the county pursuant to section 125.0104, Florida Statutes. You have advised this office that the organization is not-for-profit and is publicly owned and operated. The homestead/museum receives visitors only by appointment and you ask whether this arrangement qualifies as "open to the public" within the scope of section125.0104(5)(a)1., Florida Statutes.
Section 125.0104, Florida Statutes, known as the Local Option Tourist Development Act,[1] authorizes a county to impose a tax on short-term rentals of living quarters or accommodations within the county unless such activities are exempt pursuant to Chapter 212, Florida Statutes.[2] The purpose and intent of section 125.0104, Florida Statutes, is to "provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state."[3]
Subsection (5) of the act sets forth various purposes for which revenues from the tax may be expended. Pursuant to section125.0104(5)(a)1., Florida Statutes, such funds may be used:
"To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums, or museums that are publicly owned andoperated or owned and operated by not-for-profit organizations andopen to the public, within the boundaries of the county or subcounty special taxing district in which the tax is levied. . . ." (e.s.)
In 1992 this section was amended and the language emphasized above relating to museums was added.[4] You ask whether the phrase "open to the public" as it is used in this amendment would include situations where public visits are limited to those made by appointment.
The title to Chapter 92-204, Laws of Florida, which added the museum language, states that the purpose of the act was to amend section 125.0104, Florida Statutes, "allowing revenues from the tax to be used for certain museums by any county that imposes the tax; providing for expiration of the tax upon the retirement of bonds issued to finance such museums[.]"[5] The final bill analysis for this amendment indicates that the purpose of the bill was "to [authorize the] use of tax revenues for specified purposes related to the operation of museums open to the public, that are either publicly owned or operated or owned and operated by not-for-profit organizations."[6]
In determining the meaning of a statute, the primary purpose is to give effect to the intention of the Legislature.[7] Thus, if the museum involved in your inquiry is open to the public and is either publicly owned or operated, or is owned and operated by a not-for-profit organization, it may qualify for the receipt of local option tourist development tax moneys.
The phrase "open to the public" is not defined for purposes of the act. However, the general rule is that common words used in a statute are to be given their plain and ordinary meaning, unless it appears that they are used in a technical sense.[8] The word "open" is defined to mean "not restricted to a particular group or category of participants (to the public);"[9] "[t]o permit the use of; make available;"[10] and "[t]o render accessible, visible, or available[.]"[11] Thus, the phrase "open to the public" is commonly understood to mean that something is available for or accessible to general public use.
In several instances, this office has been asked to comment on the suitability of particular projects for funding by tourist development tax revenues, and these examples may be helpful in addressing your question. For example, in Attorney General's Opinion 83-18, this office concluded that tourist development tax revenues could properly be spent to construct a multi-purpose building to be used as a convention center and exhibition hall, a horse show arena with stables, a softball tournament center, a tennis and aquatic center, and a multi-purpose field or stadium, if such facilities are tourist related or designed and maintained primarily for the purpose of furthering the advancement, improvement, and promotion of tourism. In Attorney General Opinion 97-48, this office considered whether a county was authorized to use tourist development tax dollars to construct an artificial reef to provide diving and snorkeling opportunities in waters bordering the county. It was concluded in that opinion that "based upon the appropriate legislative finding by the governing body of the county that such a project promotes tourism, construction of an artificial reef in order to promote snorkeling and diving or as a basis for improving fishing in the coastal waters to attract tourists may be funded by tourist development tax revenues collected pursuant to section 125.0104, Florida Statutes."
Nothing in these opinions limits the use of local tourist development tax revenues to these facilities that are available for public use without restrictions regarding hours of operation. Rather, it appears logical that these facilities may indeed limit public access to certain hours when functions are occurring or tickets have been sold.
Therefore, it is my opinion that the phrase "open to the public" as it is used in section 125.0104(5)(a)1., Florida Statutes, refers to facilities that are available for use by the general public and may include facilities that are open only by appointment.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Section 125.0104(1), Fla. Stat.
[2] See, s. 125.0104(3)(a), Fla. Stat., stating that it is the intent of the Legislature that every person who rents, leases, or lets living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium for a term of 6 months or less is exercising a privilege which is subject to taxation under this section. . . ."
[3] See, Ops. Att'y Gen. Fla. 95-71 (1995), 94-12 (1994), 87-16 (1987), and 83-18 (1983).
[4] See, s. 1, Ch. 92-204, Laws of Florida.
[5] And see, s. 1, Ch. 92-204, Laws of Florida, amending subsection (7) of section 125.0104, Fla. Stat., relating to automatic expiration on retirement of bonds issued for financing these projects.
[6] Final Bill Analysis Economic Impact Statement on CS/HB's 147, 1551 1967, dated March 24, 1992, by the Committee on Tourism, Hospitality Economic Development of the Florida House of Representatives.
[7] See, e.g., People's Bank of Jacksonville v. Arbuckle,90 So. 458 (Fla. 1921), City of St. Petersburg v. Siebold, 48 So.2d 291
(Fla. 1950), and State v. Egan, 287 So.2d 1 (Fla. 1973).
[8] State v. Tunnicliffe, 124 So. 279, 281 (Fla. 1929); Gassonv. Gay, 49 So.2d 525, 526 (Fla. 1950); State v. Egan,287 So.2d 1, 4 (Fla. 1973).
[9] Webster's New Collegiate Dictionary 803 (Rev. ed. 1979).
[10] The American Heritage Dictionary of the English Language 920 (New college ed. 1979).
[11] Black's Law Dictionary 983 (5th ed. 1979).